No. 23826.

THE PEOPLE OF THE STATE OF COLORADO *v.*
ROBERT L. TOGNONI.
(448 P.2d 612)

Decided December 19, 1968.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, ROBERT H. CALKINS, Special Assistant, for the People of the State of Colorado.

WILLIAM R. YOUNG, for respondent.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

THIS is an original proceeding brought under the provisions of Chapter 20, Colorado Rules of Civil Procedure, which govern the discipline of attorneys. Robert L. Tognoni, Respondent, was admitted to the Bar of Colorado in 1952 and has engaged in the practice of law in this state since that date. On October 22, 1968, a formal complaint was filed against the Respondent by the Attorney General, alleging misconduct consisting primarily of Respondent's failure to remit trust funds received by him in behalf of one Wesley D. Ferris. The Respondent answered the complaint. However, the answer and the Respondent's testimony before the Griev-

ance Committee of this court admitted all material allegations of the complaint.

Mr. Ferris, prior to the critical period, lived in Arapahoe County and conducted an engineering partnership in a suite adjoining that in which Respondent conducted his law practice. In the summer of 1966, by which time Mr. Ferris had moved to Illinois, he telephoned the Respondent in reference to the sale of a house he owned in Arapahoe County. As a result of this conversation the Respondent agreed to sell the house for Mr. Ferris and perform all legal services involved therein for a fee of $150 and costs. In this initial conversation in reference to the house, Ferris opined that his equity in the house was about $1200, which sum he wanted to realize from the sale of the house; but he authorized the Respondent to go as low as $1000 if he was unable to find a purchaser willing to pay $1200. The Respondent sold the house on October 29, 1966, for $1250 and received that amount of money.

During this period of time the Respondent was embroiled in an unsuccessful motel venture; the Colorado State Revenue Department was threatening to attach some of his assets for unpaid sales taxes; and the Internal Revenue Service was pressing him for a substantial sum for unpaid withholding taxes. Respondent's life was further complicated during this period by marital unrest. Under these adverse circumstances, the Respondent was trying to practice law and actively manage his motel, with apparent lack of success in either endeavor.

Admittedly, with knowledge on his part of its impropriety, Respondent deposited the $1250 which he had received from the Ferris house sale in his motel bank account. Admittedly, although repeatedly replying to Ferris in Illinois and Ferris' son-in-law in Arapahoe County that a "check is in the mail," Respondent sent no check to Ferris, and at no time during its existence was there a sufficient sum in the motel bank account

to cover the balance which Respondent owed Ferris. In his appearance before the Grievance Committee, the Respondent acknowledged an awareness of the canons of professional ethics. However, he completely ignored both the letter and the spirit of those canons in his relationship with Mr. Ferris. He attempted to excuse his dereliction of duty to his clients because of the many personal problems which were complicating his life at that time. There is no excuse which justifies a lawyer's use of his client's funds without his express consent, which, of course, Respondent did not have. As for Respondent's situation — not only did it not excuse his unauthorized use of and failure to remit his client's funds, but it actually made it more imperative at such crucial time that he adhere to the letter of Canon 11, to which subsequent reference will be made.

 Respondent, since the institution of these proceedings, has adjusted his deficiencies with Mr. Ferris by paying to him the balance due on the sale of the Ferris house. This squares the account between Respondent and his client. However, the other and possibly more serious effect of Respondent's misconduct is more difficult to remedy. Our system of justice depends upon the confidence of the public in the courts and the administration of justice. As a lawyer, the Respondent is an officer of the courts. The integrity with which he, as a lawyer, conducts his practice of the law from day to day must merit the approval not only of the courts, not just that of his clients, but also of all just men. It is the sum total of the misconduct of a relatively few lawyers which denigrates the law profession as a whole and which in turn reflects adversely upon our system of justice.

The Respondent has assured the Grievance Committee of this court that exemplary conduct will mark his practice of the law henceforth. This will in time repair the damage caused by his censured conduct, and it has been taken into account by the Grievance Committee

in its recommendations to this court as to the punishment which should be meted out in this case.

■ The misconduct of the Respondent is a violation of the oath of office which he took upon being admitted to practice law; it is contrary to both the spirit and letter of the canons of professional ethics, and is contrary to the highest standards of honesty, justice, and morality imposed upon lawyers admitted to the bar of this state.

The Respondent is admonished that any further acts of misconduct on his part will be more severly dealt with.

■ To conclude this public reprimand, which is the punishment the Grievance Committee recommended to the court, Canon 11 is set forth here, not just for the benefit of the Respondent, but in further compliance with the recommendations of our Grievance Committee, to admonish "all other attorneys to refrain from commingling [clients'] funds with their own personal funds for their own use and purposes."

Canon 11:

"The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client. "Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him."

The Respondent is ordered to pay the costs of these proceedings, in the amount of $187.35, to the Clerk of this court on or before March 20, 1969.